**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 25-3058
_____

UNITED STATES OF AMERICA
v.

GREGORY TURBE,
Appellant

_____

On Appeal from the District Court for the Virgin Islands
Chief Judge Robert A. Molloy, No. 3:24-cr-00031-001
_____

Submitted May 14, 2026

Before: KRAUSE, CHUNG, and SMITH, *Circuit Judges*

(Filed: July 31, 2026)

_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge.*

Sentencing courts are afforded wide latitude in what they may consider before arriving at a determination as to what a defendant's sentence will be. That discretion was codified by Congress at 18 U.S.C. § 3661, and its breadth extends to consideration of "any information in the determination of a sentence except as 'otherwise prohibited by law.'" *United States v. Berry*, 553 F.3d 273, 280 (3d Cir. 2009) (citing U.S.S.G. § 1B1.4). So as *Berry* makes clear, a sentencing judge's discretion, though broad, is not without limit. We identified in that case one such limitation, holding that the district court had violated a defendant's due process rights by relying at sentencing on a defendant's bare record of arrests—arrests unaccompanied by sufficient factual support and for which he had not been convicted. *Id.* at 280, 284. The case before us requires that we determine whether the District Court violated Appellant Gregory Turbe's due process rights just as they were violated in *Berry*.

Turbe pled guilty to possession with intent to distribute marijuana and was sentenced by the District Court to a term of imprisonment followed by a term of supervised release. Turbe now appeals his sentence, claiming, *inter alia*, that the Court impermissibly considered his bare arrest record in determining the length of his sentence. Although the District Court approached a line we drew in *Berry*, the Court did not cross it.

2

Accordingly, we will affirm Turbe's sentence.[1]

## I.

Gregory Turbe was arrested at the Cyril E. King Airport in the Virgin Islands on November 10, 2024, after law enforcement officers discovered 11.82 kilograms of marijuana stored in 26 vacuum-sealed bags and packed in his checked luggage. He subsequently entered an open guilty plea to the single charge brought against him: possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1).

Turbe's presentence report ("PSR") calculated an advisory Guidelines range of 12 to 18 months' imprisonment and two to three years of supervised release. This calculation was based on a total offense level of 12 and a criminal history category of II. The PSR recounted Turbe's prior record of two convictions, one in 1998 for robbery and possession of a dangerous weapon, and a second in 2003 for possession of stolen property, ammunition, and a firearm during a crime of violence. It also listed three arrests which had occurred in 1998, 2007, and 2016. None of the three led to a conviction. The PSR, however, provided a description of the underlying factual circumstances for the latter two of these arrests. It stated that

---

[1] The District Court had jurisdiction pursuant to 48 U.S.C. § 1612 and 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

"the circumstances associated with [his 1998] arrest are unknown." PSR ¶ 36.

At his October 2025 sentencing, Turbe requested a sentence of probation without curfew or electronic monitoring. The Government, for its part, requested a 12-month prison sentence followed by a period of supervised release. Following presentations by both counsel and allocution from Turbe, the District Court imposed a within-Guidelines sentence of six months' imprisonment followed by three years of supervised release, with the first six months of supervised release to be served under home detention as a substitute for imprisonment.[2]

On appeal, Turbe challenges his sentence on three grounds. First, he argues that the Court impermissibly relied on the arrests listed in the PSR in deciding what sentence to impose. Second, he argues that the Court failed to properly explain its decision to sentence him to three years of supervised release. Finally, Turbe claims that the District Court's sentence was substantively unreasonable. We review each argument in turn.

---

[2] Turbe's term of imprisonment, though less than 12 months, fell within the Guidelines minimum per U.S.S.G. § 5C1.1(d), which permits a term of imprisonment to be partially served via community confinement or home detention where "at least one-half of the minimum term is satisfied by imprisonment" and "the applicable guideline range is in Zone C of the Sentencing Table."

4

## II.

The "sentencing process" of a criminal defendant "must satisfy the requirements of the Due Process Clause." *Gardner v. Florida,* 430 U.S. 349, 358 (1977) (plurality opinion). Our review of a court's sentencing process requires us "to ensure that a substantively reasonable sentence has been imposed in a procedurally fair way." *United States v. Levinson,* 543 F.3d 190, 195 (3d Cir. 2008). Turbe first contends that the District Court erred by considering his 1998, 2007, and 2016 arrests in arriving at what it considered an appropriate sentence.

"[T]he familiar abuse-of-discretion standard of review [] applies to appellate review of sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007). However, unpreserved challenges to a sentence are reviewed for plain error. *United States v. Valentin*, 118 F.4th 579, 590 n.19 (3d Cir. 2024). Because counsel did not state an objection that the District Court impermissibly considered Turbe's arrests for sentencing purposes "at the time the procedural error [was] made," we evaluate the District Court's sentencing for plain error. *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc); *see also United States v. Dawson*, 32 F.4th 254, 270 (3d Cir. 2022) (holding that a defendant's requests to the district court "were, at a minimum, too premature to preserve an objection, as no error had been committed at that time"); *cf. Flores-Mejia*, 759 F.3d, at 255 n.1 (noting a party may preserve its objection even if it is made before the sentence is

imposed so long as that party "made an objection when the procedural error became evident").[3] "The plain error test requires (1) an error; (2) that is clear or obvious; and (3) affected the defendant's substantial rights, which in the ordinary case means he or she must show a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Welshans*, 892 F.3d 566, 573 (3d Cir. 2019) (citation modified). If the appellant satisfies those three requirements, we have discretion to correct the error if "(4) it seriously affects the fairness, integrity, or reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732–33 (1993). Turbe's first challenge on appeal fails because he cannot show that the District Court relied on his bare arrest record.

## A.

Four key precedents inform our review of a sentencing court's treatment of prior arrests that did not lead to conviction. Beginning in 2009 with *Berry*, this Court held that, while the Sentencing Guidelines permit a sentencing court to consider "[p]rior similar adult criminal conduct not resulting in conviction" so long as that conduct is not "considered for purposes of an upward departure," U.S.S.G. § 4A1.3(a)(2)(E) (2009), the Due Process Clause required more. 553 F.3d at 281–82. We explained that "a bare arrest record—without

_____

[3] The parties agree that reliance on bare arrests presents a procedural issue.

6

more—does not justify an assumption that a defendant has committed other crimes and it therefore cannot support increasing his/her sentence in the absence of adequate proof of criminal activity." *Id.* at 284.

Eight years later, in *United States v. Mateo-Medina*, we reaffirmed that "consideration, even in part, of a bare arrest record is plain error." 845 F.3d 546, 550 (3d Cir. 2017). And later that same year, our Court applied the principles announced in *Berry* and *Mateo-Medina* to the sentencing proceeding we reviewed in *United States v. Ferguson* 876 F.3d 512 (3d Cir. 2017). In *Ferguson*, the panel examined a sentencing colloquy in which the district judge recounted the defendant's entire criminal history, including six juvenile offenses for which he was adjudicated delinquent, six adult convictions, and five arrests which had not led to convictions. 876 F.3d at 514. The judge summed up his review of the defendant's criminal record this way: "It appears that the defendant is incapable of abiding by the law." *Id.* And he made that observation right after his reference to the arrests that had not led to convictions. *Id*.

The *Ferguson* panel explained that the mere mention of prior arrests is not plain error per se, but rather that the defendant must "bridge the gap between reference and reliance." *Id.* at 517. Ferguson, however, did not bridge that gap. *Id.* at 516. According to the panel, the sentencing judge's "characterization of [Ferguson's] criminal history was accurate

7

regardless of the arrests, as made abundantly clear by the many convictions and adjudications of delinquency the [c]ourt had noted just seconds before it mentioned Ferguson's arrest record." *Id.* at 517. Though the district court's reference to Ferguson's arrest record "contain[ed] echoes of the references we found problematic in [*Berry* and *Mateo-Medina*]," "those references were problematic only insofar as they indicated actual reliance by the court on the arrests when determining a sentence." *Id.* Because Ferguson failed to show that the district court *actually relied* on his arrests, he did not establish that an error had been committed. *Id.*

Most recently, this Court decided *United States v. Mitchell*, 944 F.3d 116 (3d Cir. 2019). In *Mitchell*, we concluded that the sentencing court improperly relied on Mitchell's arrests not leading to convictions where the judge (1) interrupted during the prosecutor's argument to confirm the exact number of arrests not leading to convictions, (2) "later recited all 18 of Mitchell's arrests," and (3) incorporated Mitchell's prior arrests into his understanding of Mitchell's "criminal history" before relying on that criminal history throughout sentencing. *Id*. at 121-22. According to Mitchell's PSR, he had seven juvenile adjudications, six adult convictions, and 18 arrests not leading to convictions. *Id.* at 121. The district court in *Mitchell* took account of Mitchell's arrests which had not led to convictions into its understanding of his criminal history by stating:

8

*This is as long and serious of a criminal record as I've seen in twelve and a half years on the bench.* I'm not sure what Mitchell was referring to when he talked about the crimes committed against him, but I certainly know the crimes he is convicted of committing and the crimes he was adjudicated delinquent for committing, *as well as the crimes he was arrested for*.

*Id.* (citation modified). The court then repeatedly referenced and relied upon the defendant's "extensive criminal history" without distinguishing between adjudications, adult convictions, and adult arrests. *Id.* at 122. The panel concluded that the court "explicitly referred to Mitchell's arrests when describing his 'long and serious' criminal record and identified Mitchell's 'extensive criminal history' as the sole justification for his sentence." *Id.* (footnotes omitted). This, in combination with the district court's interjecting itself into the prosecutor's argument and listing Mitchell's arrests, was enough to "bridge[] the gap between reference and reliance." *Id.* (quoting *Ferguson*, 876 F.3d at 517).[4]

---

[4] We acknowledge the apparent tension between the *Ferguson* and *Mitchell* decisions. In *Ferguson* we held that a district court's listing of bare arrests as part of a defendant's "long and serious criminal history" did not amount to an error where—based only upon the defendant's six juvenile delinquencies and six prior convictions—the court's characterization was accurate regardless of defendant's bare arrests. *Ferguson*, 876 F.3d at 517. Compare this to *Mitchell*,

9

**B.**

Turning to the matter before us, Turbe contends that the District Court in three instances improperly relied on his arrests not leading to convictions. First, at the beginning of Turbe's sentencing hearing, and prior to any substantive courtroom discussion, Turbe's counsel objected both to the consideration of Turbe's arrests at sentencing *and* to their inclusion in the PSR. The District Court overruled Turbe's objection on both fronts, stating:

The Court will deny the request to strike information in the presentence report of arrest[s] that did not lead to convictions. Notwithstanding the fact that he was not convicted, it does indicate that he did have prior contact with the criminal justice system. I do want to note that I don't put much weight on an individual who has been arrested but not convicted, but it could be relevant for other purposes. So the objection is overruled.

App.71. According to Turbe, that statement demonstrates that the District Court impermissibly relied on his arrest record when it eventually imposed his sentence. While we concede that this single sentence is an imperfect and indefinite description of the judge's sentencing practices, the statement

where we held a sentencing court impermissibly relied on bare arrests when it listed those arrests as part of a defendant's "extensive criminal history" even where, excluding those arrests, the defendant's record comprised seven juvenile delinquencies and six convictions. *Mitchell*, 944 F.3d at 121–22.

10

does not bear the weight Turbe attempts to give it.

As an initial matter, the Court's denial of the request to strike the arrests listed in the PSR was well within its discretion[5] given that, as the Court noted, arrests that did not lead to convictions might still indicate prior contact with the criminal justice system. Such contact may itself be relevant for purposes unrelated to the nature or severity of the sentence to be imposed. For example, courts look at contacts with the criminal justice system in evaluating the propriety of plea agreements, *see, e.g., United States v. Ellis*, 470 F.3d 275, 281, 285 (6th Cir. 2006) (considering "the degree to which the defendant has had prior experience with the criminal justice system" as one of seven factors "to determine whether [a

---

[5] Turbe did follow the proper procedure for submitting an objection to the PSR as required under Fed. R. Crim. P. 32(f). However, looking beyond the District Court's stated reasoning, the Court would have likewise been justified in overruling Turbe's objection based on counsel's failure to provide *grounds* for contesting the PSR's findings. *See United States v. Campbell*, 295 F.3d 398, 406 (3d Cir. 2002). And because Turbe's objection ultimately generated a denial based on possible relevancy rather than any factual finding—given that, under *Campbell*, no facts were properly disputed—we review the District Court's denial for abuse of discretion. *Pierce v. Underwood*, 487 U.S. 552, 558 (1988) (explaining that "matters of discretion" are traditionally reviewable for abuse of discretion).

defendant] meets the burden of proving that the withdrawal of his guilty plea is for a fair and just reason"), and appellate waivers, *see United States v. Michelsen*, 141 F.3d 867, 872 (8th Cir. 1998) (considering a defendant's "prior experience in the criminal justice system" when evaluating whether a defendant's decision to waive his appellate rights was knowing and voluntary); *see also United States v. Delgado*, 936 F.2d 303, 310 (7th Cir. 1991) ("[A]n individual with prior experience in the criminal justice system should be especially aware of the obligation of truthfulness . . . ."), *abrogated on other grounds by United States v. Thompson*, 944 F.2d 1331 (7th Cir. 1991). Thus, it was not an abuse of discretion to reject Turbe's request to strike his arrests from the PSR.[6]

And to the extent Turbe is arguing that the District Court's statement to the effect that his arrests may have some

---

[6] Notably, several courts of appeals have interpreted Fed. R. Crim. P. 32(d)(2) as requiring the PSR to include arrests not leading to convictions. *See United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (per curiam); *United States v. Warren*, 737 F.3d 1278, 1281 & n.4 (10th Cir. 2013); *United States v. Rodríguez-Reyes*, 925 F.3d 558, 561 (1st Cir. 2019). However, following the Ninth Circuit's reasoning in *United States v. Grimaldo*, 993 F.3d 1077, 1084–85 (9th Cir. 2021), we need not resolve whether Rule 32(d)(2) requires the inclusion of arrests not leading to convictions here because the District Court did not abuse its discretion in denying Turbe's objection to their inclusion in the PSR.

relevance as contacts with the criminal justice system, and that such mention indicated an intention to rely on those arrests as a factor in determining Turbe's sentence, a mere mention is insufficient to prove reliance. To be sure, where a sentencing court relies on a defendant's contacts with the criminal justice system to inform its sentence, a defendant's bare arrests may *not* serve as relevant contacts. But nothing here suggests that the sentencing judge actually relied on those arrests or accorded them weight in determining an appropriate sentence. After the District Court's denial of Turbe's objections, the Judge never again referenced, let alone relied upon, Turbe's "contact[s] with the criminal justice system." App.71. And, as explained in more detail below, the Court's remaining references to Turbe's criminal history either explicitly or implicitly refer to only his convictions.

## C.

We turn to the second part of the District Court's denial of Turbe's objections, where it stated: "I do want to note that I don't put much weight on an individual who has been arrested but not convicted, but it could be relevant for other purposes. So the objection is overruled." App.71. These sentences are best read as the District Court leaving the door open to the possibility of considering arrests for proper evidentiary purposes *later* in the hearing.[7]

But Turbe argues that, by stating he "[doesn't] put much weight on an individual who has been arrested but not convicted," the judge necessarily was saying that he may put

---

[7] The inevitable fluidity (and often the unpredictability) of how a sentencing proceeding unfolds before a presiding judge requires that we not expect grammatical perfection or polished sentence construction from that judge. We therefore do not hold the District Judge here to a literal reading of "I don't put much weight on an individual . . . ." App.71. It is clear to us—where no other evidence suggests improper reliance on a bare arrest—that the "weight" he refers to is that weight, if any, that he might accord to an arrest that has not led to a conviction. And then, only if the arrest could be considered "relevant" for a proper purpose. No such evidentiary determination was made by the District Court during the proceeding.

14

*some* weight on such arrests.[8] Rep. Br. at 10. We grant that principles of both semantics and logic suggest that "not giving much weight" to a certain fact, standing alone, leaves open the possibility that an adjudicator may give to that fact *some* weight. But we must examine the record before us "in its entirety." *Mitchell*, 944 F.3d at 122. Notwithstanding a stray disjunctive, the succeeding clause—"*but* it could be relevant for other purposes"—supports the proposition that arrests not leading to convictions were *not* relevant to Turbe's sentence. Not only is the District Court's statement equivocal as to any relevance Turbe's arrests could possibly have, but the District

---

[8] As noted earlier, Turbe contends that the District Court erred by considering *all three* of his arrests not leading to convictions. Br. at 31–36. However, as noted by the Government, "it is not readily apparent that reliance on the 2007 and 2016 arrests would have been improper." Op. Br. at 25 n.4. Because Turbe did not properly dispute the PSR's factual description of his 2007 and 2016 arrests, that underlying conduct may sometimes be considered. *Berry*, 553 F.3d at 284 ("[A]ppellate courts do permit consideration of [an arrest record's] underlying conduct where reliable evidence of that conduct is proffered or where the PSR adequately details the underlying facts without objection from the defendant."). But this is not fatal to Turbe's argument given that the record of Turbe's 1998 arrest is indisputably bare. The PSR acknowledges that circumstances surrounding Turbe's 1998 arrest are "unknown," PSR ¶ 36, making its mere existence of no moment for sentencing purposes.

Court was also correct in stating that arrests may, hypothetically, be relevant for other purposes. For example, a defendant's arrest record may, under appropriate circumstances, be used for impeachment had that defendant falsely claimed he had never been arrested.[9] The credibility of a defendant about to be sentenced is always relevant. In other words, while a bare arrest record cannot be relied upon to determine a defendant's sentence, it may have some other use for which it could be relevant at a sentencing hearing.

Turbe argues that "[b]y overruling the objection and stating relevancy, the District Court found that it was permissible to consider the prior arrests that did not lead to convictions for sentencing purposes." Br. at 35. We find no support in the record for this contention. Although a district court's reliance on bare arrests cannot "justify an assumption that a defendant has committed other crimes" and therefore cannot "support increasing his/her sentence in the absence of

---

[9] In *Berry*, we left open the possibility that, in some unusual circumstances, arrests *might* be relevant for sentencing. 553 F.3d at 284 ("[T]here may be situations where the number of prior arrests, and/or the similarity of prior charges to the offense of conviction, becomes so overwhelming and suggestive of actual guilt that they become exceedingly difficult to ignore."). Yet we characterized such use as "highly problematic," *id.* at 285, and we are clearly not facing such an "overwhelming and suggestive" record here, *id.* at 284.

16

adequate proof of criminal activity," the same due process concerns raised in *Berry* do not apply to a district court's consideration of prior arrests either for certain forms of impeachment or as evidence of prior contact with the criminal justice system which can be relevant in evaluating the validity of plea agreements. *Berry*, 553 F.3d at 284. Here, Turbe fails to show that the District Court did anything more than leave the door open to the possible relevance of Turbe's arrests to these "other purposes." App.71. Most importantly, the sentencing judge was never called upon to rule that any of those arrests were relevant for a proper purpose.

Nothing in the record suggests to us that the sentencing judge relied on Turbe's bare arrest record. The District Court did not plainly err in overruling Turbe's objection.

## D.

Turbe points to two other instances which he claims show that the District Court relied on his arrest record at sentencing. First, he points to the Court's statement that "I'm having a hard time with a 46-year-old individual with his criminal history getting a variance." App.85; *see* Br. at 35. According to Turbe, this reference to "criminal history," without clarifying that arrests are not included, demonstrates that arrests were considered. Br. at 35. But the surrounding context makes clear that the Court considered only Turbe's convictions. And context matters here.

The Court's reference to "criminal history"

17

immediately followed defense counsel's detailed review of Turbe's past two convictions and ensuing terms of incarceration. The District Court made no reference to his other arrests. *See* App.78–79 ("I do not shy away from [Turbe's] past, but I reiterate that he has two prior events that led to convictions, one in 1998, one in 2004."). And, shortly after its reference to Turbe's "criminal history," the Court stated: "I'm having trouble with someone – giving someone what's essentially a second chance or a third chance to prove to the Court that he deserves probation when quite frankly this 46-year-old individual with his life experiences should have known better." App.85–86. We view this statement as a clear and express reference to Turbe's two prior convictions, i.e., his first and second chances.

Finally, the District Court used the term "criminal history" only one more time at sentencing, and that instance clearly referred exclusively to convictions. *See* App. 137–38. The District Court noted that the Sentencing Guidelines calculation did not take into account Turbe's 1998 conviction because it was too far in the past. The Court concluded: "so the argument could be made that the Guidelines understate your criminal history." *Id.* at 138 (citation modified). Whether the Guideline range understated Turbe's criminal history would be incontrovertible if "criminal history" were meant to include arrests not leading to convictions, which are already not factored into the Guidelines calculation. Thus, the District Court's statement makes sense only if "criminal history" does

not include arrests that had not led to convictions.

Contrast this with *Mitchell*, in which the district court "interrupted the prosecutor to highlight [the defendant]'s arrests," "recited all 18 of [his] arrests," and "explicitly referred to [the defendant]'s arrests when describing his 'long and serious' criminal record." 944 F.3d at 122. The court then pointed to the defendant's "extensive criminal history" to justify the defendant's sentence without distinguishing between adjudications, convictions, and arrests not leading to convictions. *Id*. No such interpretation can be supported in the matter before us. The District Court was using the term "criminal history" to refer only to convictions.[10]

As a final attempt to show reliance by the District Court, Turbe points to arguments made by the Government inviting the District Court to impermissibly consider his arrest record as evidence. He contends that the District Court accepted and

---

[10] We note a recurring issue, seen in this case as well as in *Ferguson* and *Mitchell*, in which a sentencing court refers to a defendant's "criminal history"—a generic term—without specifying whether it refers only to past convictions or also encompasses bare arrests. In these instances, a reviewing Court is left to discern the referent using potentially ambiguous context from the record. While here the record on this point is clear, sentencing courts would be well-advised to practice specificity when referring to past convictions and/or arrests so as to avoid confusion leading to the kind of issues we now confront.

19

acted on those arguments.[11] Br. at 35. However, we discern no such link. At that point in the proceedings, the District Court made no mention of Turbe's arrests, either unprompted or in response to the Government's improper reference to the arrests. Without record support for a link between the Government's argument and the District Court's reasoning, there can be no error, plain or otherwise.[12]

---

[11] For example, counsel for the Government argued: "What the Government wants the Court to focus on is the fact that this individual has had a number of interactions with the criminal justice system that has included convictions, *that have included arrests*. And this individual, despite that interaction, he still chooses to reoffend." App.115 (emphasis added). To the extent the Government was asking the Court to consider Turbe's bare arrest as part of Turbe's criminal record, that argument was improper. But because we discern nothing in this record to suggest that the sentencing judge was swayed in any way by this ill-advised reference, no prejudice arises from it.

[12] Nor is the Government's position on appeal without flaws. The Government argues that we should affirm because "nothing in the record otherwise supports a finding that the court relied on those arrests—let alone that they were *central* to its sentencing decision." Op. Br. at 20 (emphasis added). Though the Government does not cite *Ferguson* for the proposition that reliance on bare arrests must be "central," it is readily apparent that this specific reference is to language used in that decision. We emphasize here that "centrality" is not the correct standard. In *Mateo-Medina*, we stated that reliance, "*even in part*," on a bare arrest record constituted plain error.

In sum, none of the arguments mustered by Turbe can be said to constitute evidence that the District Court actually relied on his bare arrest record at sentencing. Thus, the District Court did not commit error.

## III.

Turbe next contends that, while the District Court sufficiently explained its imposition of a six-month term of incarceration, it failed to adequately explain its reasons for imposing a term of three years of supervised release. Once again, because Turbe did not object to the District Court's explanation during sentencing, we review for plain error. *United States v. Azcona-Polanco*, 865 F.3d 148, 151 (3d Cir. 2017). Turbe makes two distinct arguments regarding the District Court's explanation. First, he argues that the District Court failed to provide "an explanation of why the Court determined that three years' supervised release was necessary, *as opposed to the two year probationary term requested by Mr. Turbe*." Br. at 31 (emphasis added). Second, Turbe argues that

---

845 F.3d at 550 (emphasis added). And in *Ferguson* we described *Berry* as holding that "*any* reliance by the district court on the arrests themselves amounted to plain error." 876 F.3d at 515. Although we did note in *Ferguson* the "central[ity]" of defendants' arrests in both *Berry* and *Mateo-Medina*, we were not announcing a new test. *Id.* at 517. Rather, we were noting the sharp contrast between the facts in those two cases and those in *Ferguson*.

the District Court failed to explain the basis for imposing supervised release "at all." *Id.* Neither argument bears fruit.

Turbe's first argument fails because it betrays a misunderstanding of a district court's explanation requirement. A sentencing court must "explain [its] reasoning with clarity," *United States v. Merced*, 603 F.3d 203, 226 (3d Cir. 2010), and "acknowledge and respond to any properly presented sentencing argument which has colorable legal merit and a factual basis," *United States v. Ausburn*, 502 F.3d 313, 329 (3d Cir. 2007). These requirements are meant to allow a reviewing court "to see that the particular circumstances of the case have been given meaningful consideration within the parameters of § 3553(a)." *United States v. Joline,* 662 F.3d 657, 660 (3d Cir. 2011) (quoting *Levinson*, 543 F.3d at 196). Note, however, that we require district courts to respond to arguments, not necessarily to a defendant's proposed sentence. In other words, the court is obligated to address a defendant's reasons for *why* his proposed sentence should be adopted. But, if a court has rejected a defendant's arguments, it need not, as requested by Turbe, take the further step of explaining its rejection of that defendant's proposed sentence. This is because the rejection of the arguments implies the rejection of the proposed sentence those arguments purportedly support.[13] Here, the District Court

---

[13] However, if the sentencing court rejects an argument, yet diverges from a party's requested sentence for reasons other than that rejection, the court would be expected to explain

22

addressed and rejected Turbe's arguments in support of his requested sentence. It was not required to also explain its deviation from Turbe's requested two years of probation.

Turbe's second argument also fails. Turbe concedes that the District Court adequately explained the term of incarceration imposed. However, according to Turbe, "the imposition of three years' supervised release appears to have been largely an afterthought which the Court failed to explain at all." Br. at 31. He reasons that although18 U.S.C. § 3553(a) directs courts to consider a number of enumerated factors in determining a convicted defendant's sentence, it needed to explicitly address those factors again because 18 U.S.C. § 3583(c) directs courts to consider the § 3553(a) factors—apart from § 3553(a)(2)(A)—when determining whether to include a term of supervised release, and § 3553(c) then requires the sentencing court to "state in open court the reasons for its imposition of the particular sentence." That is incorrect.

Though a sentence may comprise terms of both incarceration and supervised release, we have "never required

itself. Likewise, if a sentencing court *agrees* with all of a party's arguments yet still diverges from that party's requested sentence, it should explain its reasoning, as the divergent sentence no longer follows from the court's treatment of the parties' arguments. The underlying principle here is simply that the court must "explain [its] reasoning with clarity." *Merced*, 603 F.3d at 226.

23

that a district court conduct two § 3553(a) analyses, one related to the term of imprisonment and a second related to the term of supervised release." *United States v. Clark*, 726 F.3d 496, 501 (3d Cir. 2013). This is because "such a division would be unnecessarily redundant" given the overlap between § 3553(a) and § 3583(c). *Id.* at 502. "A full discussion of relevant factors . . . will likely include analysis that supports the punitive purposes of . . . incarceration . . . as well as the rehabilitative purposes of supervised release." *Id.* (citations omitted). Instead, when a district court conducts a single analysis before sentencing a defendant to terms of both incarceration and supervised release, "we ask whether the [d]istrict [c]ourt's § 3553(a) discussion indicated meaningful consideration of those factors that would support . . . supervised release." *Id*.

Turning to the District Court's explanation, we must first set aside the District Court's consideration of "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A), as this factor cannot support a term of supervised release, *id.* § 3583(c); *cf. Esteras v. United States*, 606 U.S. 185, 195 (2025) (interpreting 18 U.S.C. § 3583(e) as an exclusive list, holding "[d]istrict courts cannot consider § 3553(a)(2)(A) when revoking supervised release").

The remainder of the District Court's explanation, however, is sufficient. The District Court discussed Turbe's

24

history of marijuana use, his prior convictions, his age, and the nature and circumstances of Turbe's offense. Though these remarks, standing alone, might have been insufficient, *see Clark*, 726 F.3d, at 502–03, the District Court went on to discuss, at length, the need for deterrence, and its concern for sentencing disparities. The District Court, in its discussion of deterrence and sentence disparity, repeatedly emphasized the insufficiency of Turbe's requested sentence of two-years' probation. Turbe would have us read these statements as justification for his term of incarceration only, rather than for his entire sentence. But that interpretation does not hold up. The District Court is best understood as differentiating a sentence of probation from the *entire* sentence of both incarceration and supervised release. While hearing argument from counsel, the District Court declared that "it is not the norm" to sentence defendants to incarceration without supervised release.[14] App.105. And, at other points during the hearing, the Court addressed both deterrence[15] and disparate

_____

[14] Indeed, here, 21 U.S.C. § 841(b)(1)(D) mandated that the sentencing court impose a term of at least two-years' supervised release following any term of imprisonment.

[15] App.140–41 (responding to Turbe's remark that he expected merely a fine because he was aware of other people engaged in the same conduct for which he was charged, "That's even more reason why a sentence for deterrence purposes is important here, because you're someone on that level with them. . . . [P]eople see that going on and see no

25

sentencing[16] without any reference to Turbe's requested probation. Lastly, the "highly deferential" standard afforded to a district court's application of the § 3553(a) factors militates in favor of this reading. *United States v. Bungar*, 478 F.3d 540, 543 (3d Cir. 2007) (declining to find that "a district court's failure to give mitigating factors the weight a defendant contends they deserve" renders its sentence unreasonable).[17]

---

consequences. So they say, I'm going to do it too. I'm going to do it, too.").

[16] App.97–98 ("[Y]ou're not looking at the need to avoid unwanted sentencing disparities amongst similar situated individuals. The fact that he has prior convictions, prior felony convictions cannot be overlooked, because it is, regardless of the timeframe -- now, you can argue that it shouldn't be given much weight . . . but that is not the only 3553(a) factor that works against him.").

[17] For the first time, Turbe argues in his reply brief that the District Court failed to explain the special conditions it placed on Turbe's supervised release. We need not address this argument because Turbe failed to raise it in his opening brief on appeal. The argument was therefore forfeited. *In re LTC Holdings, Inc.*, 10 F.4th 177, 181 n.1 (3d Cir. 2021) ("[A]rguments not developed in an appellant's opening brief are forfeited.") (citing *In re Wettach*, 811 F.3d 99, 115 (3d Cir. 2016)). However, because "we may nevertheless affirm [an unexplained] condition if we can ascertain any viable basis for the restriction in the record before the District Court on our own," this claim would have likewise failed. *United States v. Voelker*, 489 F.3d 139, 144 (3d Cir. 2007) (citation modified).

## IV.

The District Court and PSR calculated a Guideline range of 12 to 18 months' incarceration along with two to three years of supervised release. After considering the parties' arguments, the Court sentenced Turbe to six months' incarceration followed by three years of supervised release, the first six months of which were to be served on home detention. On appeal, Turbe argues that his sentence was substantively unreasonable for four reasons: (1) the District Court's purported procedural errors—its failure to explain the sentence and its reliance on arrests not leading to convictions—resulted in a substantively unreasonable sentence; (2) the deterrent effects of incarceration, relied upon by the District Court, did not justify incarceration in this instance; (3) the District Court unduly focused on old prior convictions; and (4) several mitigating factors applied to Turbe, such that the District Court's sentence was greater than necessary pursuant to 18 U.S.C. § 3553(a). These four arguments fail.

"We review a sentence for substantive reasonableness under an abuse of discretion standard," with the party challenging the sentence bearing the burden of showing unreasonableness. *United States v. Figueroa*, 729 F.3d 267, 278 (3d Cir. 2013). Though the Sentencing Guidelines are merely advisory, "we presume that procedurally sound sentences within the Guidelines are reasonable." *United States v. Jumper*, 74 F.4th 107, 114 (3d Cir. 2023) (citation modified).

27

And we will uphold a sentence unless "no reasonable sentencing court would have imposed the same sentence" for the reasons provided. *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc).

Turbe's first argument fails because, as we have already determined, his sentence was procedurally reasonable. Turbe's second argument—that deterrence cannot justify his term of incarceration—also fails. Even accepting Turbe's characterization of the research regarding incarceration and deterrence,[18] the District Court relied on multiple factors

---

[18] Without wading too deeply into the still-developing literature on incarceration and deterrence, we note that, while Turbe's cited source supports the proposition that *lengthening* a sentence "produce[s] at best a very modest deterrent effect," Nat'l Inst. of Just., *Five Things About Deterrence* (June 5, 2016), https://nij.ojp.gov/topics/articles/five-things-about-deterrence [https://perma.cc/HR6L-3PXT]; *see also* David S. Lee & Justin McCary, *The Deterrence Effect of Prison: Dynamic Theory and Evidence* 3–4 (UC Berkeley: Berkeley Program in Law and Economics, Working Paper, 2009) ("[W]e conclude that if lengthening prison sentences leads to significant crime reduction, it is likely operating through a direct, 'mechanical' incapacitation effect, rather than through a behavioral response to the threat of punishment."); Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 CRIME & JUST. 199, 201 (2013) ("[T]here is little evidence of a specific deterrent effect arising from the experience of imprisonment compared with the experience of noncustodial sanctions such

28

beyond deterrence to justify Turbe's term of incarceration, including Turbe's past convictions, the need for respect for the law, and uniformity among sentences. Thus, Turbe's argument fails to undermine the District Court's sentence.

Turbe's third argument—that the District Court gave too much weight to old convictions—also fails. To be sure, the District Court noted that, because the Guidelines recommendation does not consider Turbe's 1998 conviction, "the argument could be made that the [G]uidelines understate [Turbe's] criminal history." App.138. But the District Court went no further and, in fact, imposed a sentence within the Guideline range—a range calculated by considering only his later 2003 conviction. This strongly suggests that the Court did not "unduly" rely on the 1998 conviction. Br. at 39; *cf. United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1055 (9th Cir. 2009) (finding a sentence substantively unreasonable where a district court applied a 16-level Guideline enhancement based on an over 20-year-old offense).

Turbe's final argument, that the District Court failed to give weight to several mitigating factors, is unpersuasive. The mitigating factors pointed to by Turbe—"Turbe's difficult childhood, his history of institutionalization by lengthy

---

as probation."), it likewise notes that "there is evidence suggesting that short sentences may be a deterrent," Nat'l Inst. of Just., *supra*. It is this latter point that supports the six months of incarceration to which Turbe was sentenced.

exposure to supermax conditions while incarcerated, the lack of substance abuse treatment he received, the age of his prior convictions and the increasing societal and governmental recognition that marijuana poses minimal dangers to the community," Br. at 39–40—were all explicitly considered by the District Court at sentencing. The District Court did not act unreasonably in finding that certain of these factors were indeterminate. In fact, "[t]his is precisely the type of individualized assessment . . . to which we must defer." *Tomko*, 562 F.3d at 575.

***

The corrective function of appellate review is severely inhibited when court of appeals judges must divine from an ambiguous record the factors a district judge has considered when fashioning a sentence to be imposed on a criminal defendant. Section 3553(a) performs the salutary function of directing judges to the factors they "shall consider" in performing what is probably the most awesome of judicial duties. Yet the individualized nature of sentencing means that whether a judge has relied upon factors outside the bounds of due process is often a matter of context and interpretation. Thus, the statute provides no skeleton key to aid us in grappling with the record now before us and which we have carefully examined.

The line of our Court's cases that we have discussed, *supra*, may give rise to some "apparent tension," as we have

suggested in the margin. It is not surprising, though, that different panels of the Court which have necessarily considered different sentencing hearings came to conclusions which, in some respects, may seem at odds with one another. To some extent, the nature of individualized sentencing probably contributes to what may appear to some as inconsistent rulings.

At all events, there are ways to avoid the uncertainty created by the conditions of the record before us. We could, of course, consider promulgating a supervisory rule which would require a sentencing judge to identify any bare arrests that have been brought to that judge's attention; to name the arrests to which the judge has given any consideration; and to then explain why an arrest the judge has considered is relevant and has probative value to the crafting of an appropriate sentence.

We conclude, though, that the better course at this time is to remind district judges to simply state, explicitly, that (1) they have not relied upon any arrest not leading to a conviction that has been brought to their attention, or (2) that they have accorded relevancy to a particular arrest, explaining why they view the arrest as having probative value and the extent to which, if any, it has impacted the sentence imposed.

For forgoing reasons, we will affirm the sentence imposed by the District Court.

31

Matthew A. Campbell
Office of the Federal Public Defender
District of the Virgin Islands

   *Counsel for Appellant*

Meredith J. Edwards
Adam Sleeper
United States Attorney's Office
District of the Virgin Islands

   *Counsel for Appellee*